## Taylor v. Chesapeake & Ohio Railway Company.

(Decided March 6, 1914.)

Appeal from Kenton Circuit Court
(Common, Criminal Law & Equity Division).

Railroads—One Riding on Freight Train With Assent of Conductor— When Cannot Recover for Injury.—One who gets on a freight train with the assent of the conductor simply to ride on top of the train for his convenience, is not a passenger, and when he undertakes to jump from the train while running about twenty miles an hour and is hurt, he cannot recover although it is shown that the injury was in part due to a jerk of the train incidental to its quickening its speed just as he was trying to leave it.

B. F. GRAZIANI, HORACE ROOT for appellant.

GALVIN & GALVIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Ruffin Taylor brought this suit against the Chesapeake & Ohio Railway Company alleging in his petition that on December 30, 1910, he was a passenger on one

of its trains from Hanley, West Virginia to Montgomery, West Virginia, and that as he was about to leave the car at Montgomery, West Virginia, with the knowledge and consent of the defendant's agents and servants the speed of the train was checked, but while he was in the act of leaving the car the speed of the train was negligently increased and the car was suddenly jerked by reason of which he was thrown from the car and the wheels passed over his legs, cutting off both his legs to his damage in the sum of $2,000. The allegations of the petition were traversed by an answer. The proof on the trial by Ruffin Taylor is in brief that he was a section hand in the Hanley yards; that he wished to go to Montgomery which was about a mile and a half from Hanley to get a suit of clothes; that a freight train came along and he asked the conductor to let him ride up to Hanley and the conductor assented; that it was customary for the men employed by the defendant to ride on the trains in this way whenever they wanted to. Lou Bailey was with him. He and Bailey then got on top of the train and were sitting, one on one car and one on another, when the conductor came by them walking over the train, and went on back to the caboose; they then told him they wanted to get off at Montgomery and he told them to be certain to get off there. Taylor's testimony as to what occurred after this, put in narrative form, is as follows:

"When we got to Montgomery the train slowed up and I was waiting for it to stop dead; I was swinging off and I was just ready to get down on the ground and the train gave a sudden jerk. I stepped off on a stone and frozen ground and it throwed me under the train. I guess it was about forty or fifty yards from the depot. The engine was seventy or eighty yards from the depot, when I got hurt. I was swinging hold of the ladder fixing to light on the ground, holding to the ladder with my hand. One foot was on the steps and the other on the ground and just as I went to jump the engine gave a sudden jerk and I lit on the frozen ground and stone and things and it throwed me under the car; I was on the right hand side of the train. The engineer was on the right hand side. He was looking right back there all the time. I saw him looking back when I got on the train; he was looking back at the caboose. He opened the throttle. I heard the drivers slipping on the rails."

Lou Bailey testified practically to the same facts. He also said as follows:

"When the train got into Montgomery, at first it slowed down and then it got faster. When it slowed down we began to get off and we were on top of the car and got down on the ladder. The train did not stop at Montgomery. We knew it didn't stop there when we got on. We got on the ladder to get off when the train was going over the bridge about a good quarter of a mile from the depot. It was then going about twenty miles an hour. When it got to the depot it was going about twenty-five miles an hour. We got down there on the ladder a quarter of a mile from the depot so as to be ready to get off when the train slowed up. We were expecting it to slow up. We expected the train to keep moving along and not to stop. The engineer opened the throttle and this gave the cars a snatch. I heard the drivers on the engine slipping on the rails. Taylor and I had both gotten down on the ladder; he on one car and I on another and both of us got off. I was the first man to Taylor after he was hurt."

On this testimony the circuit court instructed the jury peremptorily to find for the defendant and the plaintiff's petition having been dismissed, he appeals.

The proof leaves no doubt that Taylor and his companion were not passengers on the train. It was a freight train, not a passenger train. They paid no fare, and offered to pay none; they were riding on top of the freight cars with the consent of the conductor; and without any notice to any member of the train crew when they saw the train was not going to stop at Montgomery, they got down on the ladders and attempted to jump off the train when it was running from twenty to twenty-five miles an hour. They knew the train did not stop at Montgomery, when they got on it. Certainly it must be conceded that a man who attempts to jump from a freight train running twenty or twenty-five miles an hour takes the risk. According to the testimony of both of these men, Taylor had put one foot out to step on the ground at the time the jerk came and the train gave a jerk while Taylor was in just this position. But this train had twenty-five cars in it and as it quickened its speed and took up the slack some jerk of the cars was unavoidable. They knew this as well as anybody for they were in the habit of riding on the cars in this way. Under all the evidence we think it is indisputable that the plaintiff's unfortunate injury was due to his own negligence in placing himself in a position of great peril and attempting to get off

a freight train running twenty or twenty-five miles an hour, when the ground on which he was to step was covered with ice. The proximate cause of the injury to the plaintiff was his own negligence. The conductor was wrong in carrying these men on the train, or in allowing them to get on it, but in doing this he was acting beyond his authority. They had no talk with the engineer, and what happened is evident from their testimony. When he opened the throttle, the driving wheels of the engine slipped upon the track and simply revolved without going forward. This checked the speed of the engine momentarily and caused slack to be given in the train as the cars were not checked. When the drivers took hold on the rails and went forward, this took up the slack, and caused the jerk to which they testify. Such jerks are unavoidable in long, heavy freight trains and must be anticipated by those who get upon them as these men did for their own convenience.

Judgment affirmed.